UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA,  )<br>                              )<br>         Plaintiff            )<br>                              )<br>    v.                        )        Case No.: CR 04-58-B-W<br>                              )<br> JESSICA BEAL,                 )<br>                              )<br>         Defendant            ) | |

DEFENDANT'S MEMORANDUM IN SUPPORT OF
DOWNWARD DEPARTURE

Defendant Jessica Beal, through her attorney, Brett D. Baber, Esq., submits this memorandum in support of her request for a downward departure pursuant to United States Sentencing Guideline § 5K2.12.  The 2003 version of § 5K2.12 provides

> If the defendant committed the offense because of serious coercion, blackmail or duress, under circumstances not amounting to a complete defense, the court may decrease the sentence below the applicable guideline range.  The extent of the decrease ordinarily should depend on the reasonableness of the defendant's actions, *on the proportionality of the defendant's action to the seriousness of the coercion*, and on the extent to which the conduct would have been less harmful under the circumstances as the defendant believed them to be.  Ordinarily coercion will be sufficiently serious to warrant departure only when it involves a threat of physical injury, substantial damage to property or similar injury resulting from the unlawful action of a third party or from a natural emergency . . .

A 2004 amendment to § 5K2.12 added the additional italicized language.

The controlling First Circuit authority with respect to the coercion and duress departure is *United States v. Sachdev*, 279 F.3d 25 (1st Cir. 2002). In *Sachdev*, the First Circuit addressed the proper standard for determining whether a defendant had been physically threatened for purposes of a downward departure under the coercion and duress guideline, U.S.S.G. § 5K2.12. The First Circuit observed that "a lesser showing of duress may still play a role at sentencing to permit a downward departure under the Guidelines" even if a duress defense is unavailable. *Sachdev* at 28. In evaluating a request for a departure under § 5K2.12, the First Circuit instructs that

> The District Court must also objectively determine whether a reasonable person in defendant's position would perceive there to be a threat, explicit or implicit, of physical injury, substantial damage to property, or similar injury resulting from the unlawful action of a third party . . . there are at least three questions to be considered: (i) the actual intent of the person alleged to have made the threat; (ii) a subjective understanding of the defendant; and (iii) whether an objective third party can reasonably consider it to be a serious threat of physical injury . . . .

*Id.* at 29. The Guideline's focus is on the coercive effect on the defendant. *Id.* at 29-30.

At the evidentiary hearing, Defendant Jessica Beal satisfied these criteria. In 2002, Jessica Beal, age 21, was living with the man who would later become her husband, Donald Beal. She had already given birth to the couple's first child, Madison, who was two years old at that time.

2

In 2002, her current husband, Donald Beal, became addicted to Oxycontin. He was heavily addicted, using the drug on almost a constant daily basis. As a result of his addiction, Donald Beal needed large sums of money to pay his dealer. Donald Beal admits to verbally harassing his wife to get her to provide the money. On one occasion in late 2002, he threatened to strike Jessica if she did not provide the money. According to Jessica, he threatened her on more than one occasion and he spit on her on another occasion. In addition, Jessica Beal and her mother, Jennifer Strout, both testified that Donald Beal punched holes in the walls of the couple's home during his withdrawal-induced tirades. Jessica Beal testified that her husband threw personal belongings around the house when he was arguing with her to get money for his habit. She describes her husband as having two distinct personalities: (1) calm and peaceful while he was high; and (2) argumentative and hostile when he was withdrawing.

Another source of physical threats came from Donald Beal's dealer, Doris Dorr. Ms. Dorr called Jessica Beal on several occasions initially looking for Donald. However, when Donald was not available, Jessica made it very clear that Ms. Dorr expected payment from Jessica, she stated that she was tired of waiting for her money, that she knew where Jessica lived and she told Jessica that she knew Jessica had a daughter. Jessica interpreted these comments as an implied threat to cause harm to either herself or to her two-year-old. Jessica was particularly concerned because her daughter was in daycare while she was at work.

The impact of these threats and verbal abuse on Jessica Beal's behavior is remarkable. Jessica Beal had absolutely no criminal history before this series of thefts from her employer and the Milbridge committee. There was no evidence to suggest that Jessica ever benefited directly from any of the money that she embezzled: she did not make lavish purchases; she drove a very old car; she did not go on expensive vacations; and, she did not use drugs. Jessica testified that all of the money went directly to support her husband's addiction. The emotion that Jessica Beal displayed during her testimony demonstrates that the threats by her husband and his dealer placed her in a very difficult situation and, unfortunately, she chose to accommodate these threats through her criminal conduct. However, the United States Sentencing Guidelines recognize that a person may be less culpable in sentencing terms when that person has committed criminal conduct under compulsion from one or more third parties. *see, e.g., United States c. Hall*, 71 F.3d 569, 573 (6th Cir. 1995) (appropriate for district court to consider departure for wife who committed crimes after husband threatened her); *United States v. Gaviria*, 804 F. Supp. 476, 480, n. 28(E.D.N.Y. 1992) (departure appropriate where woman is a victim of systematic physical and emotional abuses. Compare *United States v. Pozzy*, 902 F.2d 133, 139 (1st Cir. 1990) (departure not warranted where wife participated in husband's drug deals for financial benefit).

In summary, Jessica Beal was a very young, perhaps naïve woman who was living with a man who she had met in high school and who had fathered her

4

first child.  When her husband became addicted, she saw the ravages of that addiction on a firsthand basis.  When her husband was in withdrawal, it can be readily concluded that he was not a pleasant person to live with and he would be very demanding, both physically and mentally, on his wife.  Express threats of violence were made by both Mr. Beal and his supplier, as well as numerous instances of destruction of physical property to emphasize the point that the violence could be undertaken if Mr. Beal did not get what he desperately needed, large sums of money to fund his addiction.

   For these reasons, Defendant Jessica Beal submits that a downward departure pursuant to U.S.S.G. § 5K2.12 is appropriate under these circumstances.


Dated:  November 24, 2004      /s/ Brett D. Baber, Esq.
                 Brett D. Baber, Esq.
                 Law Office of Brett D. Baber, P.A.
                 304 Hancock Street, Suite 2E
                 Bangor, ME 04401
                 (207) 945-6111
                 Bar No.: 3143